THE LAW OFFICE OF
# RICHARD P. GALLER
ATTORNEY AT LAW
A LIMITED LIABILITY COMPANY
75 Essex Street, Suite 220
Hackensack, New Jersey 07601

(201) 678-3200
Fax No: (201) 343-2727

EMAIL: RICHARD@KGALAW.COM

RICHARD P. GALLER*

OF COUNSEL
JULIAN ALAN SCHULMAN*

*Member of NY AND NJ BAR

NEW YORK OFFICE
1 EXECUTIVE BLVD. Ste 202
SUFFERN, NY 10901
(845)368-0104

July 24, 2015

**VIA ECF**
Honorable Laura T. Swain,
United States District Judge (S.D.N.Y.)
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Irwin Lipkin et al.
               S10 1- Cr. 228 (LTS)

Dear Judge Swain;

The Defendant respectfully submits this letter in support of Defendant's position on sentencing, which is scheduled for August 5, 2015.

The Defendant plead guilty to:

1. Securities Fraud;

2. Falsifying books and records of a broker/dealer;

3. Falsifying books and records of an investment advisor;

4. Making false filings with the US Securities and Exchange Commission (SEC);

5. Falsifying statements in relations to documents required by ERISA.

In addition the Defendant plead guilty to making false statements in relation to the ERISA documents.

The total maximum term of imprisonment on both counts that the Defendant plead guilty to is 10 years. It is respectfully submitted that the court should depart from the guidelines in this matter due to the condition of the Defendant, the age of the Defendant and the fact that the counts that the Defendant plead guilty to were peripheral to the primary, Bernard Madoff Fraud and ancillary to the activities of Bernard Madoff, as this Defendant had no knowledge of the massive fraud perpetrated by Bernard Madoff. Therefore in accordance with United States vs. Booker, 543, 543 U.S. 220 (2005) and United States vs. Crosby, 397 F. 3rd 103 2nd Circuit (2005), a downward departure is appropriate. In addition, the Court should depart from the sentencing guidelines due to the severe medical conditions that the Defendant suffers from and the understanding between the Government and the Defendant in his plea agreement that acknowledges the medical conditions. Also the report of Dr. Robert Lloyd Goldstein and the report of the Dr. Bruce Charash, support the conclusion that this Defendant is not a candidate for imprisonment.

## BACKGROUND

The Defendant is 77 years old as of May 2015 and has had no prior arrests. The Defendant was married in 1960 and he and his wife have had three children, Marc, who was the owner/operator of an Arnold Bakery thrift store in Clifton, New Jersey; Russell, who resides in Camas, Washington and is a television production engineer; and Eric Lipkin, who is a co-defendant in the instant case and worked at BLMIS who resides in Ridgewood, New Jersey. The Defendant's wife has had a stroke, within the previous two years and he has had to spend significant time helping his wife recover from the stroke.

The Defendant has been examined by Dr. Bruch Charash and Dr. Robert Lloyd Goldstein, regarding both his psychiatric history and his cardiac and physical condition. Those reports are attached hereto and are submitted to support a downward departure of the Defendant's sentence in accordance with the plea agreement, which was signed on November 5, 2012. In addition of course, the Defendant did plea guilty on November 8, 2012 and did not force the government to try the case. Therefore there should be a downward departure for the acceptance of responsibility by this Defendant.

Irwin Lipkin had not worked for BLMIS since 1998. He had no knowledge of what had gone on in the intervening nearly 10 years until the arrest of Bernard Madoff. While Irwin Lipkin was an early employee of Bernard Madoff, he was not a trusted accomplice but was treated more like a clerk. Irwin Lipkin never earned a large salary or large amounts of monies or bonuses from BLMIS.

Irwin Lipkin unwittingly signed documents as requested by Bernard Madoff unfortunately, in furtherance of Mr. Madoff's scheme, which Irwin Lipkin was unaware of.

## REPORT OF DR. CHARASH

Irwin Lipkin remains a very ill elderly gentlemen. He has just been hospitalized with a urinary tract infection due to a catheter site infection, which he has had for some time after hospitalization, he has had to be place in VanDyke Rehabilitation facility, where he has remained as of April 23, 2015 and has recently been released. Mr. Lipkin suffers from a prior heart attack, a diminished heart pumping capacity and has had a pacemaker surgically implanted to try to treat these conditions. His pacemaker is a defibrillator pacemaker.

Irwin Lipkin currently takes medication for high blood pressure, cardiac electrical instability and congestive heart failure. In addition, he had diabetes and an improperly functioning thyroid. As the doctor states, Mr. Lipkin is a poor candidate for incarceration because of his potential for bleeding, difficulty walking, and in constant danger of falling.

In addition, Mr. Lipkin also has a severe hunched back and is very fragile. The doctor indicates that he can only walk 20 to 50 feet at one time and therefore cannot walk across a prison yard for meals, or a head count or other demands regarding normal daily prison life. Mr Lipkin further has periodic cardiac episodes, which prevent him from walking or moving at all. Therefore, as Dr. Charash advises, Irwin Lipkin is a "fragile elderly man", who is a poor candidate for imprisonment.

At the present time, Mr, Lipkin's activities daily include, rarely leaving the house and sitting in his kitchen for most of the day.

If Mr. Lipkin was in prison, he would not be able to leave the medical facility or infirmary for any length of time and could not insure that he was in any other part of the facility within a reasonable period of time as the prison schedule might demand.

## DR. GOLDSTEIN'S REPORT

Dr. Goldstein is a certified forensic psychiatrist and a clinical professor of psychiatry at Columbia University. Dr. Goldstein examined Mr. Lipkin on March 19, 2015 at my request. Dr. Goldstein describes Irwin Lipkin as a "sad looking elderly man who appears frail infirm and much older than his stated age". More importantly, Dr. Goldstein's diagnosis of Mr. Lipkin includes major depressive disorder and neurocognitive disorder due to probable Alzheimer's disease. The doctor finds Mr. Lipkin severely depressed and essentially nonfunctioning in society. He is worried

about dying himself, he is worried about his family, he is worried about the stroke that his wife had and who could possibly take care of her if he was incarcerated; a clear indication that Mr. Lipkin's suicidal depression would greatly increase should he be incarcerated. That together with the clear adverse effect on Mr. Lipkin's wife, should favor in home confinement rather than incarceration, especially since Mr. Lipkin was a dupe of Bernard Madoff and not a conspirator in the larger fraud perpetrated by Mr. Madoff.

## THE OFFENSE

A two count superseding felony information S9-10-1cr-228-11(LTS), was filed in the Southern District of New York. Count 1 charged that from at least the mid-seventies until December 2008 in the Southern of New York and elsewhere, Irwin Lipkin and others conspired to commit securities fraud in violation of 15 USC 78J (b) and 78(f)(f) and 17 CFR, 240.10b-5, together with other violations. Count 2 charged that from 1978 until December of 2008 in the Southern District of New York and elsewhere in documents required by Title 1 of ERISA to be published, kept this part of the records of employee welfare benefits plans and employee pension benefits plans and certified to the administrator of such plans, Irwin Lipkin, the Defendant caused to be submitted to the US Department of Labor false documents reflecting the number of employees at Bernard L. Madoff Investment securities.

The written plea agreement of November 5, 2012 includes admissions to certain of those allegations, but not knowledge of the Defendant that he knew that he was participating in a $170 billion dollar fraud.

Therefore, the Court has before it, a man whose work history started in the early 1960's as one of the first employees of Bernie Madoff. Indeed, at the time of his early employment, Irwin Lipkin could have worked for Mr. Madoff or another gentlemen who shared space in the same office. He decided to start working for Bernie Madoff. He was, and essentially remained and assistant notwithstanding any titles that Mr. Madoff may have given him.

Over the course of time, the Defendant had most of his children work part-time at the firm and even brought in his son, Eric, who was sentenced by this Court to work for Bernie Madoff. There can be no more clear evidence that this Defendant was unaware of the fraud perpetrated by Bernie Madoff, then the fact that he brought his son Eric in to work at the firm.

Irwin Lipkin is a loving and caring father, who would never put his son in jeopardy or in harm's way. Unfortunately, Eric Lipkin became more aware of the activities of Bernie Madoff than Irwin ever was. Irwin Lipkin retired to Florida in 1998 and had very little contact with Bernie Madoff since that time.

Even after retirement, the Defendant made no efforts to move monies from Bernie Madoff's investment accounts including accounts for himself, his wife, his children and grandchildren. Irwin Lipkin implicitly trusted Bernie Madoff and frequently invited him to family functions and treated him as a member of the family. This trust was of course betrayed by Bernie Madoff, but Irwin Lipkin should not suffer more than he has due to that betrayal. Since the 2007 arrest of Madoff and the subsequent arrest of this Defendant, Irwin Lipkin has done nothing but worry and remain in fear of the

consequences of his actions and the extreme hardship that he has put his family through.

Mr. Lipkin expected to live out his retirement quietly in Florida with frequent visits from his children and grandchildren. That life was shattered by the Bernie Madoff arrest and subsequently by his arrest.

It should be noted that Mr. Lipkin voluntarily came to the US Attorney's office upon request; gave them as much information as he was able to. Unfortunately he was unable to testify because his knowledge was not as significant as other parties who testified in the trial that Your Honor presided over. Therefore, while Mr. Lipkin did not earn a 5K letter, it was because of his lack of knowledge not his lack of interest in aiding the government.

Irwin Lipkin firmly believes that he is a victim in this matter and that having been duped by Bernie Madoff, is considered by him to be a personal failing in not recognizing the criminal activities that Mr. Madoff was perpetrating under Mr. Lipkin's nose.

Therefore, considering the history of this Defendant, the extreme medical hardship that a jail sentence would have on this Defendant and the fact that he is so frail, it is respectfully requested that this Court impose a probationary sentence in accordance with the guidelines outlined by the pre-sentence report.

It should be noted that a companion forfeiture order is being submitted jointly by the Defendant and the Government outlining the forfeitures agreed to by this Defendant and the Government.

Should Your Honor have any questions, please contact me at the above listed telephone number. Thank You for Your consideration in this request.

                 Respectfully submitted,
                 **THE LAW OFFICE OF**
                 **RICHARD P. GALLER, L.L.C.**

     By: _____
                 Richard P. Galler, Esq.

RPG/md